642 S.E.2d 627

**The STATE, Appellant,**

**v.**

**Arthur Franklin SMITH, Respondent.**

**No. 4202.**

Court of Appeals of South Carolina.

Heard Dec. 4, 2006.

Decided Feb. 5, 2007.

Rehearing Denied March 22, 2007.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor I. McDuffie Stone, III, of Beaufort, for Appellant.

Acting Chief Attorney Joseph L. Savitz, III, Office of Appellate Defense, of Columbia, for Respondent.

STILWELL, J.:

Arthur Franklin Smith was convicted of first degree criminal sexual conduct with a minor and sentenced to twenty years imprisonment. The trial judge granted Smith's new trial motion on the ground he was denied a fair trial, because the testimony of the victim, John Doe,[1] was corrupted and his free will potentially overridden by the coaching of Doe's aunt, Cynthia, during his testimony. The State appeals the grant of a new trial. We affirm.

## FACTS

Smith, Doe, and the rest of their immediate family moved to Bluffton from New York in the summer of 1998. After the move to South Carolina, Smith and Doe's mother were divorced. Doe was removed from his mother's care after he was discovered engaging in sexual behavior with the son of his mother's boyfriend. Doe underwent counseling, entered a sexual offender addiction program and was placed in Cynthia's custody.

Cynthia testified that she and Doe's teachers were alarmed by Doe's unusual behavior. Doe would urinate on the walls of his bathroom and bedroom and wipe his feces on the walls at school. Doe also exhibited violent behavior at home and became very difficult to control at school. Concerned by Doe's behavior, Cynthia enrolled him in counseling. Doe eventually revealed Smith's molestation of him during one of the counseling sessions.

---

1. We refer to the victim as John Doe and his older brother as Richard Roe to protect the identities of the minors involved.

Doe testified that Smith abused him when Doe was six or seven years old during visits to Smith's home. Smith warned Doe that if he revealed the abuse to anyone, Smith would "kill [Doe] or break [Doe's] bones." Doe described appalling sexual abuse and testified that such abuse occurred more than three times.

After Doe finished testifying, Smith, through his counsel, requested that the trial court remove Cynthia from the courtroom while Roe testified. Counsel stated: "I didn't object after [Cynthia] testified to [her] be[ing] in the courtroom. But it was apparent during [Doe]'s testimony that there were motions and mouth movement and things going back and forth between the witness and [Cynthia] and that was reported to me by individuals in the courtroom." Cynthia then voluntarily left the courtroom.

Doe's brother, Richard Roe, who was fifteen at the time of trial, testified in an *in camera Lyle*[2] hearing that he suffered similar abuse from Smith when he was six or seven years old. The abuse allegedly occurred several times when the family lived in New York, but stopped once the family moved to South Carolina.

After Roe finished testifying, Smith moved for a mistrial on the ground that Cynthia coached Doe during his testimony. The trial court denied the motion on the grounds that Smith's counsel knew or should have known of the coaching and did not make a contemporaneous objection so that corrective action could be taken. Smith renewed the motion for a mistrial at the conclusion of the State's case, and the trial court again denied the motion.

The trial court sent the case to the jury, which found Smith guilty. After sentencing, the issue of the extent of the aunt's coaching of Doe during his testimony was revisited.

After hearing testimony from court officials who witnessed Cynthia's alleged coaching of Doe, the trial court granted Smith's motion for a new trial. In doing so, the trial court concluded that: 1) Cynthia used body language and other non-verbal signals in an attempt to communicate with Doe; 2) this communication may have overridden Doe's free will; and 3)

---

2. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

this behavior and the potential for corruption of Doe's testimony denied Smith his right to a fair trial. The State appeals.

## DISCUSSION

### Appealability

█ Our case law makes clear that in order for the State to appeal the grant of a motion for a new trial, the error of the trial judge in granting the motion must be predicated on an error of law. *See State v. Des Champs,* 126 S.C. 416, 418, 120 S.E. 491, 492 (1923) ("[W]here the grant of a new trial in a criminal cause is predicated wholly upon error of law, we think an appeal by the State will lie."); *See also State v. Johnson,* 363 S.C. 184, 189, 610 S.E.2d 305, 307 (Ct.App.2005) ("The State may appeal the grant of a new trial when it appears it is based 'wholly upon an *error of law.'* ") (quoting *State v. Dasher* 278 S.C. 395, 400, 297 S.E.2d 414, 417 (1982)). The State contends that there is no evidence in the record to support the trial judge's finding that Cynthia's coaching actually affected Doe's testimony resulting in prejudice to Smith. They rely on Doe's testimony during re-direct examination that his responses were his own.[3] At oral argument, the State asserted that this complete lack of evidence made the judge's grant of a new trial rise to the level of an abuse of discretion and error of law. However, the trial judge appears to have based his decision to grant a new trial on the factual findings that Cynthia made the impermissible gestures to Doe during his testimony and that there was a likelihood he was improperly influenced. While there are lingering questions regarding its appealability, this issue presents at least a mixed question of law and fact, and we elect to address it on the merits.

### Law/Analysis

██ Examining the issue on the merits, we must first consider our scope of review. "[T]he grant or refusal of a new trial is within the discretion of the trial judge and will not be disturbed on appeal absent a clear abuse of that discretion."

---

**3.** Doe was not examined during the post-trial hearing as by then he and Roe had returned to their home out of state.

*State v. Smith,* 316 S.C. 53, 55, 447 S.E.2d 175, 176 (1993).
"An abuse of discretion occurs when a trial court's decision is
unsupported by the evidence or controlled by an error of law."
*State v. Walker,* 366 S.C. 643, 656, 623 S.E.2d 122, 129
(Ct.App.2005).

The State argues there was no evidence in the record to
support a finding that Doe's testimony was influenced by
Cynthia's coaching. We disagree. All parties acknowledge
that Cynthia acted inappropriately making mouthing words to
Doe and shaking her head during his testimony. The trial
judge was in a better position than we are to determine
whether Doe may have been influenced by the coaching. He
was present in the courtroom to view the visual relationship
between the relevant participants during the testimony and
was able to observe Doe's demeanor and hear his responses.
*See State v. Squires,* 248 S.C. 239, 246, 149 S.E.2d 601, 604
(1966) (deferring to "[t]he trial judge, who was in position to
know and observe all of the circumstances" and conclude an
argument was not prejudicial); *Collins v. Collins,* 283 S.C.
526, 529, 324 S.E.2d 82, 84 (Ct.App.1984) ("[T]he trial judge,
who observes the witnesses and is in a better position to judge
their demeanor and veracity, is given broad discretion."). The
trial judge also observed Cynthia and heard the testimony of
the witnesses who saw her inappropriate gestures during
Doe's testimony. There was evidence in the record to support
the judge's decision, so that the granting of a new trial was
not an abuse of discretion.

■■ Additionally, we are not persuaded by the State's
argument that Smith waived his right to request a mistrial
when he failed to contemporaneously object to the coaching.
First, it is not clear from the record that the coaching was
apparent to Smith's counsel during Doe's cross-examination.
The trial judge acknowledges in the record that he himself did
not see the coaching when it first occurred. It appears that
Smith brought the misconduct to the court's attention as soon
as the extent of the coaching was revealed. The trial judge did
initially determine that Smith waived any objection. Howev-
er, the judge only had a portion of the relevant information
before him and did not have the luxury of time, as do appellate
courts, to weigh and ponder the question. As trial judges are
often required to do, he had to make a ruling on the spot.

When that initial decision was made, he did not have the benefit of the testimony at the hearing from witnesses who were in a better position to see what had transpired between Doe and Cynthia. Once privy to this additional information, the judge became convinced that the chance of prejudice to Smith was much greater than he initially thought. Surely, under such circumstances, a judge has the latitude to change his mind about a prior ruling. Just as a judge retains the power to change a ruling on a motion in limine based on developments at trial, a judge has the prerogative to change his mind with respect to a ruling when reflection and information convince him that his prior ruling was incorrect. *See State v. Floyd,* 295 S.C. 518, 520, 369 S.E.2d 842, 842 (1988) (stating a ruling on a motion in limine is subject to change based on events at trial). In the instant case, the judge heard additional evidence, considered the matter, and concluded that his prior ruling regarding waiver was not proper under these circumstances.

It is notable that the trial judge did not direct a verdict in Smith's favor or exonerate him in any way. This decision means that Smith will be tried again, and Doe's testimony in that case will be "uncoached" and free of any impermissible influence.

For all the foregoing reasons the decision of the trial court is

**AFFIRMED.**

SHORT, J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, J. (dissenting):

I would reverse the order granting Smith a new trial and for that reason I respectfully dissent.

John Doe, Smith's son, testified that Smith abused him when Doe was six or seven years old during visits to Smith's home. During Doe's testimony, several people in the courtroom observed Doe's aunt, Cynthia, mouthing words and shaking her head up and down and side to side, seemingly in response to the questions Doe was asked.

After Doe finished testifying, Smith made a motion for the trial court to remove Cynthia from the courtroom before Richard Roe, Doe's brother, testified. Smith alleged, based on information from other individuals in the courtroom, inappropriate "motions and mouth movement and things going back and forth" between Cynthia and Doe occurred during Doe's testimony.

Cynthia left the courtroom voluntarily. Smith did not use this opportunity to advance any further arguments on the coaching issue or move for a mistrial. Smith received the relief he sought in the motion; the removal of Cynthia from the courtroom.[4] As a result, Smith's motion to remove Cynthia from the courtroom did not preserve the coaching issue for further review.

Roe, who was fifteen at the time of trial, testified in an *in camera Lyle*[5] hearing that he suffered similar abuse from Smith. Following Roe's testimony, Smith moved for a mistrial on the ground that Cynthia coached Doe during Doe's testimony.[6] One of Smith's attorneys explained to the trial court:

> I believe I saw [Doe] looking in the direction of his aunt to seek an answer. It was not until I finished with his questioning that I sat down that I was informed by co[-]counsel and other members of the court, all in the courtroom, that that, in fact, was the magnitude of what was taking place.

Smith waited until after Roe finished testifying before requesting a mistrial.

The trial court ruled that Smith waived the issue because his attorneys knew of Cynthia's conduct during Doe's testimony but did not request a mistrial or immediately raise the issue and allow the court the chance to take appropriate

---

**4.** *See Bowman v. Bowman*, 357 S.C. 146, 160, 591 S.E.2d 654, 661 (Ct.App.2004) (citations omitted) ("[A] party cannot complain when it receives the relief for which it has asked.").

**5.** *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).

**6.** *See State v. Lynn*, 277 S.C. 222, 226, 284 S.E.2d 786, 789 (1981) ("Failure to contemporaneously object to the question now advanced as prejudicial cannot be later bootstrapped by a motion for a mistrial.").

action.[7]   Smith renewed his motion for a mistrial at the conclusion of the State's case and again at the close of evidence.   The trial court denied the motions.

After his conviction and sentencing, Smith moved for a new trial.   Smith presented testimony from court officials who witnessed Cynthia's alleged coaching of Doe.   One of the witnesses, Stephanie Smart, testified that she observed Cynthia attempting to coach Doe during his testimony and brought it to the attention of one of Smith's attorneys during Doe's testimony.   As pointed out earlier, Smith did not request a mistrial until after Roe's testimony, even despite being informed of Cynthia's misconduct during Doe's testimony.

The trial court granted Smith's motion for a new trial.   In doing so, the trial court made the following findings of fact: 1) Cynthia used body language and other non-verbal signals in an attempt to communicate with Doe;  2) this communication may have overridden Doe's free will;  and 3) this behavior and the potential for corruption of Doe's testimony denied Smith his right to a fair trial.

Having ruled that Smith waived the coaching issue during trial and absent a contemporaneous objection by Smith's counsel, I believe the trial court erred by granting Smith's motion for a new trial on the same issue.[8]   I would reverse the order granting Smith a new trial and reinstate his sentence.

---

**7.** *See State v. Sullivan*, 310 S.C. 311, 314, 426 S.E.2d 766, 768 (1993) (noting that an appellant must object at his first opportunity to preserve an issue for appellate review).

**8.** *See State v. Groome*, 274 S.C. 189, 192, 262 S.E.2d 31, 32 (1980) ("Failure to contemporaneously object to the questions now advanced as prejudicial cannot be later bootstrapped by a motion for a mistrial."); *McElveen v. Ferre*, 299 S.C. 377, 381, 385 S.E.2d 39, 41 (Ct.App. 1989) (upholding the trial court's denial of a motion for a new trial where the error was not preserved); *see also Idaho v. Higgins*, 122 Idaho 590, 836 P.2d 536, 550 (1992) (holding the trial court had no basis to grant a new trial where the issue was not properly preserved during the trial); *Louisiana v. Marcotte*, 817 So.2d 1245, 1250 (La.Ct. App.2002) ("In our opinion, a motion for new trial does not preserve or revive an issue not properly and timely raised by objection.   This is true because, by the time a new-trial motion is made, the trial court has lost its best opportunity to correct the error at issue."); *Schacher v. Dunne*, 109 Or.App. 607, 820 P.2d 865, 867 (1991) ("An error that is not preserved cannot properly form the basis for a motion for a new

trial."); *Carlson Mining Co. v. Titan Coal Co.*, 343 Pa.Super. 364, 494 A.2d 1127 (1985) (noting a trial court may only award a new trial on questions that are preserved); 66 C.J.S. *New Trial* § 17 (1998) ("Although there is some authority to the contrary, generally matters not properly pleaded, or put in issue, or preserved, may not be raised on a motion for a new trial.").