679 S.E.2d 176

**The STATE, Petitioner,**

v.

**Arthur Franklin SMITH, Respondent.**

No. 26673.

Supreme Court of South Carolina.

Heard Feb. 19, 2009.

Decided June 22, 2009.

---

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport and Assistant Attorney General Michelle J. Parsons, all of Columbia and Solicitor I. McDuffie Stone, III, of Hampton, for Petitioner.

Chief Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice BEATTY:

In this case, Arthur Franklin Smith (Respondent) was convicted of first-degree criminal sexual conduct (CSC) with a minor and sentenced to twenty years in prison. The trial judge granted Respondent a new trial on the ground the minor victim's aunt "coached" him while he was testifying at trial. The State appealed this decision to the South Carolina Court of Appeals.

In a divided opinion, the Court of Appeals affirmed the order of the trial judge. *State v. Smith,* 372 S.C. 404, 642 S.E.2d 627 (Ct.App.2007). The State petitioned for and was granted a writ of certiorari for this Court to review the decision of the Court of Appeals. We find the State did not have a right to appeal the trial judge's order. Accordingly, we vacate the opinion of the Court of Appeals.

## FACTUAL/PROCEDURAL HISTORY

In the summer of 1998, Respondent, his two minor sons (John Doe and Richard Roe), his wife, and his daughter moved to Bluffton, South Carolina from New York. Shortly after the move, Respondent and his wife were divorced. Doe was removed from his mother's custody after his brother, Richard Roe, discovered him engaging in sexual behavior with the son of his mother's boyfriend. Doe, Roe, and their sister were ultimately placed in the custody of their uncle and aunt, Cynthia Solak, who lived in West Virginia.

Following Doe's exhibition of sexual preoccupation, sexual acting out, and destructive behavior, he underwent counseling

and eventually revealed Respondent's molestation of him during one of the counseling sessions.

As a result, Respondent was indicted for first-degree CSC with a minor. At trial, Doe described in detail the sexual abuse. On cross-examination, Doe acknowledged that prior to trial, he and his aunt (Solak), had reviewed the questions that would likely be asked and discussed his testimony. Doe also admitted that he had looked over to Solak while testifying. However, Doe maintained on re-direct examination that "[t]hese are my answers." Doe also acknowledged that he revealed the sexual abuse while living with Solak because he felt "safe."

After Doe's testimony, Respondent's counsel asked the trial judge to remove Solak from the courtroom while Doe's older brother, Richard Roe, testified during an *in camera* hearing on a *Lyle*[1] issue. In making this request, counsel stated:

I didn't object after [Solak] testified to [her] be[ing] in the courtroom. But it was apparent during [Doe's] testimony that there were motions and mouth movement[s] and things going back and forth between the witness and Miss Solak and that was reported to me by individuals in the courtroom.

Subsequently, Solak voluntarily left the courtroom.

Following Roe's *in camera* testimony, Respondent's counsel moved for a mistrial on the ground that Solak improperly coached and influenced Doe during his testimony. In the alternative, counsel moved to strike Doe's testimony. Counsel contended that Solak's misconduct compromised the validity and credibility of Doe's testimony. The trial judge denied counsel's motions, stating:

You did not, as an officer of the court, call it to my attention so that I could take appropriate action so you knew it was going on . . . and took no action.

And so I think that is a waiver and I do find—And I watched [this] young man testify—that I do not believe that this caused any—influenced his answers because he was basically going over the same things so I'm not going to declare a mistrial. . . .

---

1. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

In response, Respondent's counsel claimed that she was not aware of the "magnitude of what was taking place" until she finished her cross-examination of Doe and sat down with her co-counsel who informed her of what he saw between Doe and Solak during the testimony.

The judge then reiterated his denial of the mistrial motion and the motion to strike Doe's testimony, explaining:

[I]f co[-]counsel knew it, you're charged with knowing it too, because he's sitting at the table with you.

Having failed to bring the matter to the court's attention, you know, if it's a strategic matter, you decided to ask him about it and knowing—you did not make—ask for a sidebar or anything, which you could have.

I frankly think what you did was probably the best way because I think the jury's much more influenced in determining the credibility of testimony as to whether or not the will of the young man was overridden by the people in authority. . . .

I have the utmost confidence in the jury to render a just verdict in this case. I believe it certainly is made more difficult by that unfortunate thing happening.

At the conclusion of the State's case, Respondent's counsel renewed the mistrial motion. The trial judge again summarily denied the motion.

After the jury found Respondent guilty of first-degree CSC with a minor, the trial judge sentenced him to twenty years in prison. The next day, the trial judge heard testimony regarding Respondent's motion for a new trial specifically with respect to the issue of Solak's coaching of Doe during his testimony.

At the hearing, Respondent's counsel offered the testimony of three individuals who were present in the courtroom during Doe's testimony.[2]

The first witness testified "I couldn't see [Doe] from where I was so I don't know what he was doing but I could see her sitting over there and she was nodding her head back and forth, up and down and verbally saying stuff." When asked

---

2. Neither Doe nor Solak testified at this hearing as they had already returned to their home in West Virginia.

by the trial judge whether it appeared that Solak was trying to assist Doe in answering the questions, the witness responded, "That's what it appeared to be; however, I couldn't see him so I don't know, you know, if he was looking at her but I assumed he was. . . ."

The second witness also testified that she observed Solak making motions with her head during Doe's testimony. She believed Solak was "trying to give the minor, twelve-year old answers to the questions that were being asked."

The third and final witness testified she observed Solak make head gestures toward Doe. She stated she thought Respondent's counsel had observed the motions stating, "when you were questioning him you asked him a question and, and I think you noticed his eyes going towards her. And that's when you moved over in front of her."

After the post-trial hearing, the trial judge granted Respondent's motion for a new trial. In so ruling, the judge found: 1) Solak "used body language and other non-verbal signals in the courtroom during [Doe's] testimony and such communications were directed at [Doe] during his testimony"; 2) "[s]uch behavior on the part of [Solak] may have overridden [Doe's] free will"; and 3) "[Solak's] behavior and the potential for corruption of [Doe's] testimony clearly denied [Respondent] a fair trial."

The State appealed the trial judge's order to the Court of Appeals. In a divided opinion, the Court of Appeals affirmed the grant of a new trial. *State v. Smith,* 372 S.C. 404, 642 S.E.2d 627 (Ct.App.2007). The majority prefaced its analysis by implicitly finding that the State could appeal the decision on the ground it was based on an error of law. *Id.* at 408, 642 S.E.2d at 629–30. The majority also concluded that Respondent's counsel's failure to contemporaneously object to the coaching did not waive Respondent's right to request a mistrial given the record did not clearly show the coaching was apparent to Respondent's counsel during Doe's cross-examination. *Id.* at 409–10, 642 S.E.2d at 630–31. Additionally, the majority believed the trial judge did not have all of the relevant information or much time to consider the issue when he initially denied the mistrial motions. Having determined the issue to be preserved, the majority found evidence in the

record to support the trial judge's decision to grant a new trial. *Id.* at 409, 642 S.E.2d at 630.

The dissent advocated reversing the order of the trial judge and reinstating Respondent's sentence. *Id.* at 410, 642 S.E.2d at 631. The dissent believed Respondent received the relief sought in his request to remove Solak from the courtroom after Doe's testimony. Because Solak voluntarily left the courtroom, the dissent found counsel's request did not preserve the coaching issue for appellate review. *Id.* at 411, 642 S.E.2d at 631. Moreover, the dissent determined Respondent waived the issue because his counsel was apprised of Solak's conduct during Doe's testimony but did not object or request a mistrial until after Doe's brother, Roe, testified. Because there was no contemporaneous objection by Respondent's counsel, the dissent found the trial judge erred by granting Respondent's motion for a new trial on this issue after the judge had initially concluded that Respondent waived the coaching issue. *Id.* at 412, 642 S.E.2d at 632.

This Court granted the State's petition for a writ of certiorari to review the decision of the Court of Appeals.

## DISCUSSION

The State contends the trial judge erred in granting Respondent a new trial. In support of this contention, the State avers: 1) the issue was not properly preserved at trial, and 2) the judge erroneously substituted his judgment for that of the jury.

In response, Respondent asserts this Court should dismiss the State's appeal because the State had no right to appeal the order granting Respondent a new trial. In the alternative, Respondent claims the trial judge properly granted him a new trial when it became apparent that Solak improperly coached Doe during his trial testimony.

 As a threshold issue, we must resolve whether the State had the right to appeal the trial judge's order. "The State may only appeal a new trial order if, in granting it, the trial judge committed an error of law." *State v. Johnson*, 376 S.C. 8, 10, 654 S.E.2d 835, 836 (2007). "When determining whether an error of law exists, and therefore whether the

State has the right to an appeal, it is necessary to consider the merits of the case." *Id.* at 11, 654 S.E.2d at 836.

In order to review the merits of this case, we must initially determine whether Respondent was procedurally barred from making a new trial motion challenging Solak's "coaching" of Doe.

Although counsel failed to object to Solak's coaching during Doe's cross-examination, we find the issue was properly preserved in that counsel timely raised the issue to the trial judge and obtained a ruling. After Doe's cross-examination, counsel became aware of the extent of Solak's coaching once she conferred with her co-counsel and other individuals in the courtroom who observed Solak's conduct. At that point, she informed the trial judge of the situation and moved for a mistrial. In view of this procedural posture, we conclude counsel's objection was sufficiently contemporaneous and provided the trial judge an opportunity to rule on the mistrial motion. *See State v. McIntosh,* 358 S.C. 432, 445 n. 7, 595 S.E.2d 484, 491 n. 7 (2004) (finding objection was sufficiently contemporaneous where defendant's attorney objected after second improper question); *cf. State v. Pauling,* 322 S.C. 95, 100, 470 S.E.2d 106, 109 (1996) (stating that "[h]aving denied the trial judge an opportunity to cure any alleged error by failing to contemporaneously object . . ., Appellant is procedurally barred from raising these issues for the first time on appeal").

Because counsel posited a timely objection and received a ruling, we find the grounds for the mistrial motion and, in turn, the new trial motion were not waived. *See State v. Nelson,* 331 S.C. 1, 6 n. 6, 501 S.E.2d 716, 718 n. 6 (1998) (stating "the ultimate goal behind preservation of error rules is to insure that an issue raised on appeal has first been addressed to and ruled on by the trial court").

Furthermore, at the time the trial judge ruled on the motion for a mistrial, he was not aware of the magnitude of Solak's misconduct. In fact, after Respondent's counsel requested to have Solak removed from the courtroom, the judge indicated that he did not notice Solak's alleged coaching. However, at the hearing on the new trial motion, the trial judge was more fully apprised of Solak's "coaching" of Doe. Based on this

additional evidence, the trial judge was able to thoroughly consider the mistrial motion and conclude that his prior ruling regarding waiver was not proper under these circumstances. Thus, not until the new trial hearing was the trial judge able to make an informed decision based upon all the relevant facts, law, and arguments. *See I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments."); *Rhoad v. State,* 372 S.C. 100, 108 n. 3, 641 S.E.2d 35, 39 n. 3 (Ct.App. 2007) ("Until an order is written and entered, the judge is free to change his mind and amend prior rulings."); *cf. State v. Floyd,* 295 S.C. 518, 520, 369 S.E.2d 842, 843 (1988) (stating a ruling on a motion in limine is subject to change based on events at trial). Consequently, we find the mistrial issue was not waived and the trial judge properly considered it as a ground for granting Respondent a new trial.

 Having found Respondent did not waive the mistrial issue, we now address the merits of this issue in conjunction with determining the State's right to appeal. Thus, the question becomes whether the trial judge's grant of a new trial constituted an error of law.

This Court is confined by an extremely limited "abuse of discretion" standard of review regarding the grant of a new trial in the circumstances presented in this case. *See State v. Simmons,* 279 S.C. 165, 166, 303 S.E.2d 857, 858 (1983) (stating the grant or denial of a new trial is within the trial judge's discretion and will not be overturned on appeal absent a clear abuse of discretion); 23A C.J.S. *Criminal Law* § 1605 (2008) ("Except in certain circumstances, it is reprehensible for a spectator to try to influence a witness while the witness is testifying, or to try to convey directions to the witness as to the answers that should be given. It is largely within the discretion of the trial judge as to what should be done when such conduct occurs.").

Based on our review of the record, there is evidence to support the judge's decision. All parties admitted that Solak acted inappropriately in mouthing words and making nonverbal signals to Doe during his testimony. Clearly, the trial

judge was in the best position to assess the credibility of the witnesses that testified at the hearing on the motion for a new trial. *State v. Tutton,* 354 S.C. 319, 325, 580 S.E.2d 186, 190 (Ct.App.2003) ("The determination of a witness's credibility must be left to the trial judge who saw and heard the witness and is therefore in a better position to evaluate his or her veracity.").

Because Doe was the key witness in the prosecution's case, we cannot disregard the trial judge's conclusion concerning the prejudicial impact on Respondent's right to a fair trial. *Cf. Sharp v. Commonwealth,* 849 S.W.2d 542, 546–47 (Ky.1993) (reversing trial judge's denial of defendant's motion for a mistrial where child witness was coached by a family friend and finding "the violations here as so egregious and inimical to the concept of a fair trial that they cannot be disregarded in the name of trial court discretion"); *State v. Dayhuff,* 37 Kan.App.2d 779, 158 P.3d 330, 342 (2007) (holding trial court's refusal to allow defendant, at the time of trial, to develop a factual basis for his motion for a mistrial that was based on the allegation that the child advocate's gestures during child witness's testimony served to coach or vouch for the child warranted a new trial).

▌ Although we are aware of the trauma a trial may bring to minor victims, we reach our decision constrained by our standard of review and the necessity to uphold the integrity of the judicial system. In view of the clearly improper "coaching" by Solak of the minor victim, we find the judge did not abuse his discretion or commit an error of law in granting Respondent a new trial. In so holding, we are guided by the following principle:

> When it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused *should be granted a new trial,* although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law.

*State v. Britt,* 235 S.C. 395, 425, 111 S.E.2d 669, 685 (1959) (emphasis added), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

Because we find the trial judge properly exercised his authority to grant a new trial upon the facts, we conclude the judge's decision was not predicated "wholly upon error of law." *See State v. Dasher*, 278 S.C. 395, 399–400, 297 S.E.2d 414, 416 (1982) (recognizing trial judge's power to grant a new trial upon the facts) [3]; *cf. State v. Des Champs*, 126 S.C. 416, 418, 120 S.E. 491, 492 (1923) ("[W]here the grant of a new trial in a criminal cause is predicated wholly upon error of law, we think an appeal by the [S]tate will lie."). Accordingly, we hold the State did not have the right to appeal the trial judge's order.

## CONCLUSION

Based on the foregoing, we hold the State did not have the right to appeal the trial judge's decision to grant Respondent a new trial. As a result, we vacate the opinion of the Court of Appeals.

**VACATED.**

WALLER, PLEICONES and KITTREDGE, JJ., concur.
TOAL, C.J., dissenting in a separate opinion.

---

3. In *Dasher*, a jury found the defendant guilty of conspiracy to violate the South Carolina Controlled Substance Act. After the verdict, the defendant filed a post-trial motion for judgment in his favor notwithstanding the verdict. Prior to sentencing, the trial judge, without the assignment of any grounds, "supplanted the jury verdict of guilty and entered a verdict of his own of not guilty." *Dasher*, 278 S.C. at 395, 297 S.E.2d at 414. The State appealed the trial judge's decision. Finding no precedent in this state to support the trial judge's decision, this Court reversed. *Id.* at 400, 297 S.E.2d at 416. In so ruling, this Court reasoned that "[t]his is not a case in which a trial judge has granted a *new trial* upon the facts (a power which he admittedly has), but rather one in which a trial judge has entered a verdict of *not guilty* in the face of conflicting evidence (a power he has never had in this jurisdiction)." Id. Because the trial judge set aside the verdict of the jury in the face of conflicting facts and substituted his judgment for that of the jury, this Court concluded that the judge committed an error of law. *Id.* at 400, 297 S.E.2d at 417.

The instant case is distinguishable from *Dasher*. Here, the trial judge did not set aside the verdict of the jury. Instead, the trial judge properly exercised his authority to grant a new trial upon the facts given "an injustice had been done" during the trial. *Id.* at 400, 297 S.E.2d at 416. Thus, unlike the trial judge in *Dasher*, the judge did not invade the province of the jury or substitute his verdict for that of the jury.

Chief Justice TOAL:

I respectfully dissent. In my view, the State had a right to appeal the trial judge's granting of a new trial because the order was based upon an error of law.

In reviewing the trial court's order granting a new trial, the majority is correct to observe that we review the trial court according to an abuse of discretion standard. However, we must apply this standard in the context with which a trial court may exercise its discretion to grant a new trial. We have said many times that the granting of a mistrial is an extreme measure that should only be taken where an incident is so grievous that prejudicial effect can be removed in no other way. *State v. Beckham,* 334 S.C. 302, 310, 513 S.E.2d 606, 610 (1999) (citing *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998)). Furthermore, we must consider the entire trial record when considering whether the trial court abused its discretion in ordering a new trial. *See State v. Johnson,* 334 S.C. 78, 91, 512 S.E.2d 795, 803 (1999) ("The prejudicial character of the error must be determined from its relationship to the entire case.")

My review of the record reveals no evidence to support the trial court's finding that Respondent was "clearly denied" a right to a fair trial. In my view, the trial court's own factual finding that Solak's behavior "may have over-ridden the victim's free will" does not support such a conclusion. Doe confirmed that his testimony was his own, and Solak left the courtroom once it was alleged that she was coaching Doe's testimony. Even if Solak's behavior did result in some degree of prejudice to Respondent, I believe this prejudice was outweighed by the ample evidence in the record to support the jury's verdict. I find no foundation for the trial court's order and believe that the trial court abused its discretion in granting Respondent a new trial. I would therefore reverse the opinion of the court of appeals, reverse the order of the trial court, and reinstate Respondent's conviction and sentence.