LOCKEMY, C.J.:
**95 The State appeals the trial court's order granting a new trial in Edward Lee Dean's conviction of first degree burglary, grand larceny, and malicious injury to real property. We dismiss the State's appeal.
I. FACTS AND PROCEDURAL BACKGROUND
John Lester Hart, Jr. arrived at his Greenwood County home on August 13, 2012 to find the back door to his home and a storage room door had been forcibly opened. A door to a car in the yard had also been forced open. Hart immediately called the Greenwood County Police Department (the Department). When Hart went inside his home, "everything was ransacked." The gun cabinet in one of the bedrooms had been pried open and the weapons were missing. A second gun cabinet in the storage room had "the door ripped open" and several, but not all, of the firearms were missing. In total, fifteen firearms, jewelry, a gold coin collection, and money were missing from Hart's home. The value of the missing items exceeded $10,000.
Officer Travis Cox was the first responder from the Department. Officer Cox observed that the front door, the storage room door, and a gun cabinet had been forcibly opened, and that the house was in "disarray." Hart gave Officer Cox serial numbers for several guns that were missing. Officer Cox **96 entered the serial numbers into NCIC, the national database for firearms and warrants. Additionally, officers photographed a wet shoeprint on the pavement and a second shoeprint on the front door. The shoeprints have never been matched to any shoes. Officers took a crowbar and a hammer with a wooden handle from the storage room to be processed for latent prints. No prints were ever recovered from either the crowbar or hammer. Hart later sent Investigator Dale Boyer a list of all the missing firearms in addition to the list of serial numbers he initially provided Officer Cox.
Edward Lee Dean lived in Unit A in a duplex on Taggart Street in Greenwood County. On August 27, 2012, the Department's dispatch received an anonymous call about items located underneath a home on Taggart Street. The call came from Christi Lopez, Dean's cousin. Captain Chip Davenport responded to the call and went to the Taggart Street address. The only person present was Mamie Quarles in Unit B of the duplex. Captain Davenport spoke with Mamie, who told him her daughter, Kaleeka Quarles, leased the apartment, but was not home. Captain Davenport then spoke to Kaleeka on the phone and received consent to search under the entire duplex. Dean was not home when Captain Davenport searched the duplex. Captain Davenport received consent to search inside Unit A of the duplex from Dean's mother, Annie Dean.
Officers found a .308 rifle and a second rifle, along with office equipment under the duplex. Captain Davenport ran the available serial number through NCIC and the .308 rifle matched a serial number Hart provided. The second rifle found under the duplex matched the description of Hart's missing bolt action rifle, but no serial number was listed. No fingerprints were ever recovered from either of the rifles found underneath the duplex. Inside the duplex, officers found ammunition that matched the description of ammunition missing from Hart's home.
*246 Adrian Gaston, Antwine Anderson, and two juveniles were arrested on August 31, 2012 for a separate burglary in Greenwood County. On September 5, 2012, Gaston implicated himself, along with Dean and Anderson in the burglary at Hart's home. Gaston testified Anderson drove Gaston and Dean to Hart's home. When they arrived, Anderson backed into the **97 driveway and either Dean or Anderson kicked in the door while Gaston stayed outside as the look out. Gaston testified Dean "stripped the lock off [the storage room door] with his hand." Gaston, Dean, and Anderson all went into the storage room and took guns. They also took guns from a storage building on Hart's property. Gaston stated they took approximately nine or ten guns from Hart's home. After they loaded the guns in Anderson's car, they returned to Anderson's house to divide the guns between the three of them. They took Dean back to his home and watched Dean put the guns under his house on Taggart Street. Based on Gaston's statements to Greenwood County police, Dean was served with arrest warrants for the burglary at Hart's home on September 12, 2012.
A. Dean's Trial
Dean filed a pre-trial motion for continuance, judicial supervision, and a scheduling order, as well as a motion to dismiss or, in the alternative, motion to compel disclosure of Brady[1] information on December 11, 2013.
During the pretrial hearing on December 11, 2013, the State informed the court it was calling two of the three co-defendants' cases, Dean and Anderson, to trial and that Gaston was testifying against both. The trial court asked the State whether it had made any arrangements or deals with Gaston. The State responded that it had made no offers to Gaston. Dean's counsel responded that he had a "hard time believing that Mr. Gaston is testifying in order to give information to help the State seek a prison sentence of life without the possibility of parole. ... And [he] can't believe that [Gaston's counsel] would allow [Gaston] to do that unless they had some sort of assurances that they were going to get some benefit from the State." The court asked the State a second time whether any deals had been made with Gaston and the State assured the court that no deal had been made. The court then stated:
I'm hearing that there's no deals, there's no testimony, there's no assurances, there's [been] no bargaining, there's **98 been no promises made and if that is in fact the case and Mr. Gaston wants to plead straight up to burglary first degree, that's perfectly fine. If however that burglary first degree suddenly becomes petty [sic] larceny, that does seem somewhat peculiar.
The trial court denied Dean's motion to delay sentencing because Dean had not been convicted at the time of the pre-trial discussion. However, the court suggested delaying any sentencing of Dean and holding his new trial motion in abeyance pending Gaston's sentencing. The court also ordered that the State "shall be under a continuing duty to disclose any promises, agreements, deals, or arrangements made with any of the State's witnesses."
Dean's trial was initially called on January 14, 2014. The court continued the trial due to the threat of inclement weather, but reiterated that the State had a continuing duty to disclose any promises or deals made with Gaston. Dean's trial was called a second time on March 14-15, 2014 before Judge Addy. Gaston described Dean's involvement in the burglary. Gaston testified on cross-examination that he was not testifying "in order to get out of that trouble," but because he was "[j]ust being honest."[2] Gaston stated he was not expecting any benefit in exchange for his testimony. Dean's counsel asked Gaston whether he "plan[ned] to enter plea negotiations *247 with the prosecutors" and Gaston responded "No, sir."
Dean was convicted by the jury of first-degree burglary, grand larceny, and malicious injury to property. Dean moved to defer sentencing in accordance with the court's suggestion from the pre-trial hearing in order to wait until Gaston was sentenced. The court stated it was "inclined to request that [it] hear [Gaston's] case as well, just so that everybody can be fed out of the same spoon and treated fairly."
The court denied Dean's motion to defer sentencing, but took jurisdiction over Gaston's case and requested a pre-sentence investigation for Dean.
**99 Judge Addy sentenced Dean to twenty-five years' imprisonment on June 9, 2014.
B. Gaston's Plea Hearing and Sentencing
Dean was convicted in Greenwood County in the Eighth Judicial Circuit. Gaston's plea hearing and sentencing took place on May 14, 2015 in Saluda County in the Eleventh Judicial Circuit before Judge Thomas Russo. During Gaston's sentencing hearing, the court asked him:
... Other than the reduction of [two indictments for attempted burglary and seven indictments for burglary] and the dismissal of [one charge from Saluda County], other than that, has anybody promised you anything, held out any hope of reward or threatened you in any way to get you to enter these pleas?
Mr. Gaston: No, Sir.
Assistant Solicitor Sheek from Greenwood County then informed the court that the State was dismissing all thirteen indictments against Gaston for his cooperation in testifying against Dean and Anderson. Gaston's counsel stated:
And that's the way these things are done, Judge .... He cooperated with the Solicitor's office .... Judge, we would implore you to consider ... the fact that he's been so helpful and instrumental in securing these other convictions ....
Assistant Solicitor Young from Saluda County told the court that Saluda County had "absolutely no deal of any kind should he go forward with trial" with Gaston. Assistant Solicitor Sheek followed and told the court, "[l]ikewise, Judge, the understanding with [Gaston's counsel] was we would certainly convey to the [c]ourt if he cooperated in the trials but other than that there were no deals made beforehand."
Gaston was sentenced to seven years' imprisonment, suspended upon the service of 128 days, five years' probation with the special condition that probation could end after two years if restitution was paid, with credit for 128 days served.
**100 C. Dean's New Trial Hearing
On June 18, 2014, Dean filed a motion for a new trial based on after-discovered evidence. Because that motion was not ripe, Dean filed a second motion for a new trial on June 9, 2015 following Gaston's plea hearing and sentencing. Dean filed a supplement to his motion for a new trial on April 7, 2016.
Solicitor Stumbo stated in an email to Assistant Solicitor Odom, Dean's counsel (Charles Grose), Judge Addy, and Judge Russo prior to the hearing on Dean's motion for a new trial that Assistant Solicitor Odom stated on the record to the trial court that Gaston was told his cooperation would be considered and taken into account when his charges were dealt with at a later date. Solicitor Stumbo also stated that Gaston was never extended a plea offer on any of his pending charges until a few weeks before his plea hearing and sentencing in Saluda.
Judge Addy presided over the hearing for Dean's motion for a new trial on April 13, 2016. Solicitor Stumbo stated at the hearing that even though Assistant Solicitor Sheek told Judge Russo that Gaston testified against Dean, the Solicitor's office did not recommend or negotiate probation as a sentence. The court noted its concern about not hearing Gaston's plea and sentencing by stating:
The [c]ourt would retain jurisdiction over Gaston and Anderson. And this [c]ourt did not place that in the file. Honestly, Solicitor, the thing that the [c]ourt is struggling with more than anything else is, and I've *248 said this before in front of everyone assembled here, I always try to be the man of my word. I promised that I would assume jurisdiction of the other two cases. ... But, again, what this [c]ourt is struggling with more than anything else is the integrity of the [c]ourt, not so much your integrity, Solicitor. ... But the [c]ourt is more concerned about the promises that I made to Mr. Dean, to retain jurisdiction over the other co-defendants. And it just - it doesn't look right. For a lack of a more artful explanation, it doesn't look right that the [c]ourt has assured the defense that the [c]ourt would handle those other pleas so that the [c]ourt would be in a **101 position to assess whether any kind of deal or 'approached in chambers' kind of situation arose.
Additionally, the court stated that while Dean and Grose "clearly feel that there was some deal. There was some back room deal. I don't see where it's necessary at all to reach that point or to address that. On re-trial, that kind of thing, can be addressed through Gaston or Anderson."
In a May 4, 2016 order, the trial court granted Dean's motion for a new trial based on "reasons explained at the April 13, 2016 hearing."
II. STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only." State v. Wharton , 381 S.C. 209, 213, 672 S.E.2d 786, 788 (2009). "The State may only appeal a new trial order if, in granting it, the trial judge committed an error of law." State v. Smith , 383 S.C. 159, 165, 679 S.E.2d 176, 180 (2009) (quoting State v. Johnson , 376 S.C. 8, 10, 654 S.E.2d 835, 836 (2007) ) (citing State v. Des Champs , 126 S.C. 416, 120 S.E. 491 (1923) ) (quotations omitted). "A trial judge has the discretion to grant or deny a motion for a new trial, and his decision will not be reversed absent a clear abuse of discretion." Johnson , 376 S.C. at 11, 654 S.E.2d at 836 (citing State v. Simmons , 279 S.C. 165, 166, 303 S.E.2d 857, 858 (1983) ).
III. LAW/ANALYSIS
The State argues the trial court abused its discretion by granting Dean a new trial. The State asserts Dean's rights were not violated because the trial court declined to find a discovery violation. We disagree.
A. Preservation
Dean argues the State's appeal should be dismissed because the State's argument is not preserved. "Our appellate courts have consistently found issues preserved for review when the issue was raised to and ruled upon by the trial court." State v. Cain , 419 S.C. 24, 33-34, 795 S.E.2d 846, 851 (2017). See, e.g., State v. Williams , 417 S.C. 209, 228 n.10, 789 S.E.2d 582, 592 n.10 (Ct. App. 2016) ("In order for an issue to be preserved for appellate review, it must have been raised to **102 and ruled upon by the trial judge." (quoting State v. Dunbar , 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) )). "While a party may not argue one ground at trial and another ground on appeal, State v. Bailey , 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989), we do not require a party to use the same language on appeal as it did at trial, Herron v. Century BMW , 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011)." Id. at 33-34, 795 S.E.2d at 851. "A party may not argue one ground at trial and an alternate ground on appeal." Dunbar , 356 S.C. at 142, 587 S.E.2d at 694.
Dean argues the State failed to object to or allege that the trial court granted a new trial based only on concerns about a broken promise to Dean and not because a discovery violation occurred. Dean filed his amended motion for a new trial after Gaston's sentencing and argued that a new trial was appropriate based on after-discovered evidence. In the State's response to Dean's motion for a new trial, the State argued "there has been absolutely no plea deal or offer."
The trial court granted Dean's motion for a new trial for "the reasons discussed at the April 13, 2016 hearing." During the hearing, Solicitor Stumbo repeatedly stated there were no improper promises, negotiations, or deals made with Gaston in exchange for his testimony against Dean. Similarly, on appeal, the State argues the trial court did not find a *249 discovery violation at the hearing, but granted Dean's motion based on the trial court's desire to fulfill its promise to retain jurisdiction. Thus, the State argued before the trial court and on appeal that no discovery violation occurred. Therefore, whether the trial court erred as a matter of law by granting Dean's motion for a new trial is preserved for appellate review.
B. Appealability
As a threshold issue, this court must determine whether the State may appeal the trial court's grant of a new trial. Smith , 383 S.C. at 165, 679 S.E.2d at 180. "When determining whether an error of law exists, and therefore whether the State has the right to appeal, it is necessary to consider the merits of the case." Id. at 166, 679 S.E.2d at 180 (quoting Johnson , 376 S.C. at 11, 654 S.E.2d at 836 ).
**103 "A motion for a new trial based on after-discovered evidence must be made within one (1) year after the date of actual discovery of the evidence by the defendant or after the date when the evidence could have been ascertained by the exercise of reasonable diligence. ..." Rule 29(b), SCRCrimP.
It is well-settled that the granting of a new trial based upon after discovered evidence is addressed to the sound discretion of the trial court once the movant has made the requisite showing that the new evidence: (1) would likely change the result if a new trial were granted; (2) was discovered since trial; (3) could not have been discovered prior to trial by the exercise of due diligence; (4) is material to the issue of guilt or innocence; and (5) is not merely cumulative or impeaching.
State v. Caskey , 273 S.C. 325, 329, 256 S.E.2d 737, 738-39 (1979) ; see, e.g., State v. Fowler , 264 S.C. 149, 213 S.E.2d 447 (1975). "It is also true that the rule is well settled that a motion for a new trial on the ground of after-discovered evidence is addressed to the sound discretion of the trial court and will not be reviewed unless there is abuse of that discretion or that the decision was influenced by an error of law." State v. Clamp , 225 S.C. 89, 96, 80 S.E.2d 918, 921 (1954).
"Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." Giglio v. United States , 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting Napue v. Illinois , 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) ). "We do not, however, automatically require a new trial whenever 'combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict ...." Id. (quoting United States v. Keogh , 391 F.2d 138, 148 (2nd Cir. 1968) ).
"[I]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with witnesses against **104 him." U.S. Const. amend. VI. "The Confrontation Clause guarantees a defendant the opportunity to cross-examine a witness concerning bias." State v. Brown , 303 S.C. 169, 171, 399 S.E.2d 593, 594 (1991) (citing Davis v. Alaska , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ). "The fact that a cooperating witness avoided a mandatory minimum sentence is critical information that a defendant must be allowed to present to the jury." State v. Gracely , 399 S.C. 363, 374-75, 731 S.E.2d 880, 886 (2012).
Dean argues Gaston's sentence is after-discovered evidence material to Dean's guilt or punishment. Gaston was the only witness against Dean and primarily connected him to the burglary. While one of the rifles found under the duplex matched the serial number Hart provided, no other forensic evidence was recovered in the investigation. Gaston's testimony was essential for the State to charge Dean with first-degree burglary, grand larceny, and malicious injury to property and to nolle prosequi the receiving stolen goods charge. Without Gaston's testimony linking Dean to the burglary, the State would likely have been able to charge Dean *250 merely with receiving stolen goods under section 16-13-180 of the South Carolina Code (2015).
On direct examination, Gaston testified he had not been promised anything in return for his testimony. On cross-examination, Dean's counsel raised Gaston's pending charges and the potential sentences he was facing. Dean's counsel attempted to question Gaston about whom he was relying upon to gain his freedom, but this line of questioning was ended by the court for being argumentative. Gaston's cross-examination left the jury with the impression he was not testifying for any personal benefit, he would not negotiate with the Solicitor's office, and he was not motivated by receiving reduced charges or a lenient sentence.
Our supreme court has considered whether testimony regarding prosecutorial immunity or leniency in exchange for testimony amounted to after-discovered evidence in State v. Caskey . In Caskey , the "asserted after-discovered evidence was a conversation between the solicitor and a [co-defendant] whereby the [co-defendant] was promised immunity or leniency in return for his testimony against [the defendants]."
**105 Id. at 329-30, 256 S.E.2d at 739. Because the conversation was "practically identical to statements by the solicitor at a pre-trial conference ... that his office was not pursuing the [co-defendant's] charge," the statements did not meet the requisite factors needed to grant a new trial. Id . Additionally, the statements were merely impeaching and not material to the defendant's guilt or innocence. Id. Therefore, the supreme court found that the lower court committed a manifest abuse of discretion amounting to an error of law in granting the motion for a new trial. Id. at 330, 739, 256 S.E.2d 737, 738-39.
The facts in this case are distinguishable from Caskey . The State assured the trial court many times that no deals, negotiations, or agreements had been offered to Gaston in exchange for his testimony. However, at Gaston's plea hearing, Assistant Solicitor Sheek stated that the "understanding" with Gaston was that the Solicitor's office would convey his cooperation to the court if he cooperated in the trials and other than this agreement to convey cooperation, no other deals existed. These statements differ from the State's statements throughout the pre-trial hearing, trial, and new trial hearing that absolutely no deal, negotiations, assurances, or promises had been made to Gaston, including any agreement from the State that it would communicate Gaston's cooperation to the court.
Additionally, Gaston was the only witness linking Dean to the burglary. The Department's evidence custodian, Wesley Love, testified that no prints were found on the hammer or crowbar taken from the scene. Officer Cox, the first police responder, testified the two shoeprints observed on the pavement outside the home and on the door were never matched to any shoes. Apart from Gaston's testimony, no other evidence linked Dean to the burglary. Thus, Gaston's testimony was material to determining Dean's guilt or innocence. See Giglio , 405 U.S. at 154-55, 92 S.Ct. 763 ("Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the cases, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know it."). Because Gaston's testimony was material to determining Dean's guilt or innocence, Dean has a constitutional right to **106 cross-examine Gaston about his motive and bias and whether he had any deal with the State regarding his cooperation. Therefore, Dean has shown that the after-discovered evidence would likely change the result if a new trial were granted, is material to the issue of guilt or innocence, and is not merely cumulative or impeaching.
Beginning with pre-trial motions, Dean requested the State disclose any plea, negotiation, or deal with Gaston. The trial court ordered and reiterated throughout trial that the State was under a continuing duty to disclose any plea deals or negotiations.
The evidence of Gaston's sentence and whether he received a reduction in charges and any leniency in sentencing in exchange for his cooperation was discovered after Dean's trial and sentencing. Additionally, *251 Dean's counsel consistently requested pre-trial and during the trial that the State disclose any agreements, negotiations, promises, or deals it had with Gaston. Therefore, Dean has shown that the evidence was discovered since trial and it could not have been discovered prior to the trial by the exercise of due diligence.
The decision to grant a new trial is soundly within the trial court's discretion and this court "is confined by an extremely limited 'abuse of discretion' standard of review." Smith , 383 S.C. at 167, 679 S.E.2d at 181. Based on our review of the record, there is evidence to support the trial court's decision. Gaston was the key witness in the State's case. Dean was unable to cross-examine Gaston about the details of any understanding with the State that his cooperation would be communicated to the court. Thus, no evidence was presented to the jury about Gaston's motive or bias for testifying against Dean.
Further, the trial court was primarily concerned with upholding the integrity of the court. Gaston faced one indictment in Saluda County and nine indictments in Greenwood County. Even though the trial court at Dean's trial retained jurisdiction to hear Gaston's case in Greenwood County, the State brought all of Gaston's charges in Saluda County. Although Judge Addy stated he did not doubt the integrity of the Eighth Judicial Circuit Solicitor's Office, both Judge Addy and Judge Russo expressed great concern for the appearance of **107 "judge shopping" in this case. We share this concern. Protecting the integrity of our judicial system is fundamental to administering justice. In addition to recognizing "the necessity to uphold the integrity of our judicial system," Id. at 168, 679 S.E.2d at 181, we likewise emphasize the need for respect of the constitutional principles raised in the handling of these matters. The trial court committed no error of law in granting a new trial.
CONCLUSION
Based on the foregoing, the State's appeal is
DISMISSED.[3]
SHORT and MCDONALD, JJ., concur.

Brady v. Maryland , 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) (finding suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution).

Gaston was charged with two first-degree burglaries and thirteen non-burglary offenses that occurred between August 13, 2012 and May 21, 2013. In total, Gaston was facing the possibility of two life sentences, as well as 93 years, 300 days' imprisonment on the other charges.

In light of our disposition of the case, it is not necessary to address Respondent's issues on cross appeal. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).