767 S.E.2d 212

The STATE, Respondent,

v.

Arthur SMITH, Appellant.

Appellate Case No. 2011–200306.

No. 5283.

Court of Appeals of South Carolina.

Heard Feb. 4, 2014.
Decided Dec. 17, 2014.
Rehearing Denied Jan. 23, 2015.

Breen Richard Stevens, of Orangeburg, and Appellate Defender Benjamin John Tripp, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Christina J. Catoe Bigelow, both of Columbia, for Respondent.

SHORT, J.

Arthur Smith appeals his conviction for criminal sexual conduct with a minor in the first degree. He contends the trial court erred in: (1) admitting testimony of the forensic interviewer regarding Smith's identity; (2) allowing the State's expert to testify regarding the relationship between the length of delay in disclosure of sexual abuse and the credibility of the disclosure; and (3) permitting the victim to refresh his recollection by reading his testimony from Smith's previous trial. We affirm.

## I. The First Trial

Smith was first tried for this crime in November 2004. After the jury found Smith guilty, the trial court granted him a new trial "on the ground he was denied a fair trial, because the testimony of the victim ... was corrupted ... by the coaching of [his] aunt." *State v. Smith,* 372 S.C. 404, 406, 642 S.E.2d 627, 628–29 (Ct.App.2007), *vacated on other grounds,* 383 S.C. 159, 679 S.E.2d 176 (2009). This court affirmed. *Id.* at 406, 642 S.E.2d at 629. On writ of certiorari, the supreme court agreed the trial judge did not abuse his discretion or commit an error of law and remanded the case for a new trial. *Id.*

## II. The Second Trial

The second trial began on September 19, 2011. The State presented evidence that in approximately 1997, when the victim was five years old, his family moved from Buffalo, New York, to Bluffton, in Beaufort County. The parents separated in 1999. Mrs. Smith retained primary custody of the children, and Smith had generous visitation. The alleged sexual assaults occurred while the victim visited his father during this period of separation. The victim, who was nineteen at the time of the second trial, was six years old when Smith began abusing him and eight when the abuse ended.

The victim testified that on "[m]ore than three" occasions during 1999 and 2000, his father "would make me do things to him and do things to me." He testified his father "would suck my penis and stick his penis in my butt.... He made me suck his penis too and try to put my penis in his butt also." On cross-examination, the victim admitted he did not "have a good recall of everything that happened in 2000," and that in a pretrial hearing the previous day he "didn't remember ... that there was oral sex until [he] read a transcript" from the first trial to refresh his memory.

The victim's two siblings[1] testified Smith also sexually abused them. The victim's brother testified that "multiple times" while the family was living in Buffalo, Smith performed

---

1. The victim is the middle of three children with an older brother and a younger sister. In 2001, the brother was eleven, the victim was eight, and the sister was seven.

oral and anal sex on him and forced him to reciprocate. This abuse occurred when the brother was between the ages of six and eight. The brother testified Smith threatened to hurt Mrs. Smith if he told anyone about the abuse. The victim's sister testified Smith abused her after the family moved to Bluffton. She testified that on "countless" occasions when she was six and seven years old, Smith forced her to perform oral sex on him and would "touch" her vagina and "butt" with his hands. She also testified Smith told her not to tell anybody.

Beginning in November 2001, the victim and his two siblings lived in the custody of their aunt and her husband. Soon after moving in with the aunt, the victim exhibited poor behavior, began counseling, and was placed in a SOAP[2] program.

The victim first reported his father's sexual assaults to his aunt in January 2002, but no one reported the crimes to law enforcement until May 2003. The victim testified he did not tell anyone earlier because "[Smith] told me that he would kill me or break my bones if I told anybody" and "I was scared." The victim's brother and sister also did not disclose to anyone that their father had abused them. The victim's aunt admitted she learned in January 2002 that Smith sexually abused the victim, but she did not disclose this to anyone until May 2003. She explained her delay in disclosure was because, "We were still working on taking care of [the victim's] health issues."

Andres Florencio, a criminal investigator for the Beaufort County Sheriff's Office (BCSO), testified the BCSO used forensic interviewers from Hope Cottage, a children's advocacy center, to interview child victims of crime. Florencio testified without objection that in May 2003, the victim and his aunt came to the BCSO and reported that the victim's father sexually assaulted the victim in 1999 and 2000.

Kendra McIlvee Twitty, a forensic interviewer and counselor at Hope Cottage, explained in detail the techniques and procedures a forensic interviewer uses to interview a child, and testified the victim disclosed he had been abused. She testified, "[The victim] disclosed that he had to suck his dad's penis...." Smith's counsel immediately objected, and the trial

---

2. SOAP is the acronym for a Sex Offender and Addiction Program, which specializes in children who act out in a sexual manner.

court sustained the objection on the basis that any testimony quoting the victim's statements must be limited to "the time and place" of the incident. Twitty then testified, "When I asked about time frame, he said that it happened since he was, like, six or seven years old, .... I'm not exactly sure of the number, but he said it had been happening for a number of years." As to place, the forensic interviewer testified the victim told her "it happened in South Carolina in a trailer and they would be in his dad's bedroom."

The trial court overruled Smith's objection to this last statement. Immediately thereafter, the assistant solicitor showed the forensic interviewer a copy of her report to "refresh your recollection as to the time frame of the abuse." She then testified, "I had written [the victim] reported that he was about six or seven years old when his dad started to do these things to him." The trial court overruled Smith's immediate objection to this statement.

The State's final witness was Tod Lynch–Stanley, a licensed clinical social worker and director of Family Reconstructions and SOAP, a private practice in Georgia. The trial court found Lynch–Stanley qualified as an expert in sexual deviancy. Lynch–Stanley explained he began treating the victim sometime after 2000. When Lynch–Stanley began treatment, the victim had not revealed he was sexually abused.

The State asked Lynch–Stanley to explain "a little bit about what is delayed disclosure in a sexual abuse setting." Lynch–Stanley explained there are "many reasons for [delayed disclosure]." On cross-examination, Smith's counsel asked, "What did you mean by a long period of delayed disclosure?" Lynch–Stanley answered, "I would say a long disclosure in general might be anything longer than two or three months.... Some disclosures occur after two or three months. Some occur after two years or 20 years." Counsel asked, "What about three years?" Lynch–Stanley replied, "That would be a fairly long delayed disclosure." The following dialogue occurred at the beginning of the State's redirect examination:

Q: Does the length of the delay in the disclosure have any—in your opinion, does it erode the credibility of the disclosure?

Smith: Objection, Your Honor.

Court: Overruled.

A: No, it really doesn't. People disclose at different times.
Different things, . . . triggers and things like that, can
come up that cause people more symptoms, . . . the
symptoms come up . . . and . . . occur[ ] at different
times. . . .

So, you might have someone who doesn't show symptoms
of sexual abuse for a year, six months, eighteen months,
and then all of a sudden, something triggers them and
reminds them of the abuse. . . .

So that's why you have disclosures that occur at different
times as well, so I never see it as a credibility or non-
credibility thing. I think when you're looking at credibili-
ty, you're looking for other types of things, but not
necessarily the length of disclosure.

The jury convicted Smith, and the court sentenced him to
thirty years of imprisonment. This appeal follows.

## III. STANDARD OF REVIEW

In criminal cases, this court sits to review errors of
law only and is bound by the trial court's factual findings
unless they are clearly erroneous. *State v. Wilson*, 345 S.C. 1,
5–6, 545 S.E.2d 827, 829 (2001). Thus, on review, the appel-
late court is limited to determining whether the trial court
abused its discretion. *Id.* at 6, 545 S.E.2d at 829. A trial
court abuses its discretion when its ruling is unsupported by
the evidence or controlled by an error of law. *State v.
Garrett*, 350 S.C. 613, 619, 567 S.E.2d 523, 526 (Ct.App.2002).
"In general, rulings on the admissibility of evidence are within
the trial court's sound discretion and will not be disturbed on
appeal absent an abuse of that discretion resulting in preju-
dice to the complaining party." *State v. Halcomb*, 382 S.C.
432, 443, 676 S.E.2d 149, 154 (Ct.App.2009).

## IV. LAW/ANALYSIS

### A. The Forensic Interviewer

Smith argues the trial court erred in overruling his objec-
tion to Twitty's testimony that identified Smith as the perpe-

trator after previously limiting the testimony to time and place. We find no reversible error.

In a criminal sexual conduct case, the testimony of a witness regarding a victim's out-of-court statement is governed by the South Carolina Rules of Evidence, which provide that a statement is not hearsay if:

> The declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... (D) consistent with the declarant's testimony in a criminal sexual conduct case or attempted criminal sexual conduct case where the declarant is the alleged victim and the statement is limited to the time and place of the incident.

Rule 801(d)(1), SCRE. This corroborative testimony is limited to the time and place of the alleged assault and cannot include details regarding the assault. *Smith v. State,* 386 S.C. 562, 566, 689 S.E.2d 629, 632 (2010). "Among the details which must be excluded under the rule is the identity of the alleged perpetrator." *State v. Jeffcoat,* 350 S.C. 392, 396, 565 S.E.2d 321, 323 (Ct.App.2002).

The trial court limited Twitty's testimony to time and place after she disclosed that the victim had reported "he had to suck his dad's penis." The trial court sustained the objection and gave a curative instruction to the jury. Smith did not object to the curative instruction and has accordingly waived any objection. *See State v. Wilson,* 389 S.C. 579, 583, 698 S.E.2d 862, 864 (Ct.App.2010) ("[A]s the law assumes a curative instruction will remedy an error, failure to accept such a charge when offered, or failure to object to the sufficiency of that charge, renders the issue waived and unpreserved for appellate review."); *State v. White,* 371 S.C. 439, 445, 639 S.E.2d 160, 163 (Ct.App.2006) (stating a curative charge is generally deemed to cure an allegation of error).

However, when Twitty identified the perpetrator by testifying the victim reported he was about six or seven years old "when his dad started to do these things to him," the trial court overruled Smith's objection to Twitty's testimony. We agree with Smith this constituted error because it went beyond time and place. However, we find the testimony was

cumulative to other testimony; thus, it was not reversible error.

Florencio testified without objection that the aunt and the victim reported to him that the victim had been sexually assaulted by his father. Thus, Smith was previously identified as the perpetrator without objection, rendering Twitty's testimony harmless because it was cumulative. *See State v. Jennings*, 394 S.C. 473, 478–79, 716 S.E.2d 91, 93–94 (2011) (distinguishing between harmlessness of improperly admitted hearsay merely cumulative to other evidence and prejudice of improper corroboration testimony that is merely cumulative to the victim's testimony); *State v. Schumpert*, 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993) (finding where a counselor's testimony exceeded the time and place limitation by stating the defendant's name during testimony, any error was harmless because two other witnesses testified without objection in the same manner).

**B. Expert Testimony Regarding the Length of Delay in Disclosure**

 Smith next argues the trial court erred in permitting Lynch–Stanley to testify regarding the relationship between the length of delay of disclosure of sexual abuse and the credibility of such disclosure, maintaining the testimony bolstered the victim's testimony. We find no reversible error.

 "The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012) (citing *State v. Wright*, 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977)). Therefore, a witness may not give an opinion on whether he or she believes another witness is telling the truth or comment on another witness' veracity. *State v. Kromah*, 401 S.C. 340, 358–59, 737 S.E.2d 490, 499–500 (2013). This rule applies to experts, prohibiting them from commenting on the credibility of child witnesses in sexual abuse cases. *See Jennings*, 394 S.C. at 480, 716 S.E.2d at 94 ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper.").

In both *Kromah* and *Jennings*, our supreme court found improper bolstering in the admission of expert evidence indi-

cating a child witness gave a "compelling" indication of abuse. *See Kromah*, 401 S.C. at 359, 737 S.E.2d at 500 (finding expert testimony about a compelling finding of child abuse was inappropriate); *Jennings*, 394 S.C. at 480, 716 S.E.2d at 94 (finding error in the admission of a forensic interviewer's written reports that concluded each of three child victims had provided a compelling disclosure of abuse); *see also State v. Dawkins*, 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (noting treating psychiatrist's indication he believed victim's allegations concerning symptoms were genuine was improper); *State v. Taylor*, 404 S.C. 506, 514, 745 S.E.2d 124, 128 (Ct.App. 2013) (stating it is improper "when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth"), *cert. denied*, Aug. 21, 2014.

However, our supreme court has found an expert did not vouch for a victim's veracity where the expert never stated she believed the victim and gave no other indication concerning the victim's truthfulness. *See State v. Douglas*, 380 S.C. 499, 503–04, 671 S.E.2d 606, 609 (2009) (concluding a forensic interviewer did not vouch for the victim's veracity where she never stated she believed the victim and gave no other indication concerning the victim's veracity). This court has likewise found no improper bolstering where the expert did not address the veracity of the victim. *See State v. Hill*, 394 S.C. 280, 295, 715 S.E.2d 368, 376–77 (Ct.App.2011) (finding the expert did not vouch for the victim's truthfulness where the expert testified only that he saw the types of details in the victim's interview that he would look for in determining whether a child had been coached).

In this case, we likewise find no improper vouching because Lynch–Stanley gave no indication of his belief of the victim's truthfulness. During direct examination, Lynch–Stanley explained a lengthy delay in a victim's disclosure of sexual abuse is consistent with, if not necessitated by, the trauma the victim has suffered. When sexual abuse occurs, particularly if the victim is a child, the victim may not be able to immediately disclose the abuse for numerous reasons, including the victim's feelings of shame over what happened and the victim's fear of or intimidation by the perpetrator. We find this was an appropriately general explanation of the medical or scientific reasons a child might not immediately disclose sexual trauma.

During cross-examination, Smith's counsel questioned Lynch–Stanley regarding his specialization of treating symptoms of victims and questioning whether typical symptoms of sexual abuse could arise from other triggers. Counsel next questioned Lynch–Stanley as follows:

Counsel: The delayed disclosure that you spoke of, isn't it true that there are—when you spoke about delayed disclosure, you spoke of a long period. What did you mean by a long period of delayed disclosure?

Lynch–Stanley: [I]t's somewhat relative in terms of what long disclosure is. I would say a long disclosure in general might be anything longer than two or three months.... [S]ome disclosures occur within minutes. Some disclosures occur after two or three months. Some occur after two years or 20 years.

. . .

Counsel: What about three years?

Lynch–Stanley: That would be a fairly long delayed disclosure.

On redirect examination, the State asked, "Does the length of the delay in the disclosure have any—in your opinion, does it erode the credibility of the disclosure?" Lynch–Stanley testified, "No, it really doesn't."

We recognize the State's question was inappropriate because it invited vouching by Lynch–Stanley. We also recognize Lynch–Stanley's initial response, standing alone, would constitute vouching for the victim's credibility. Lynch–Stanley continued his response, however, by stressing that credibility and delayed reporting are unrelated. He qualified his initial response, "I never see it as a credibility or non-credibility thing. I think when you're looking at credibility, you're looking for other types of things, but not necessarily the length of disclosure."

Despite the State's inappropriate question, we find no reversible error. In conjunction with Lynch–Stanley's direct and cross-examination testimony, we find the redirect testimony did not improperly bolster the victim because Lynch–Stanley qualified his initial response and never gave an opinion regarding whether the victim was telling the truth. *See State v. Douglas,* 367 S.C. 498, 521, 626 S.E.2d 59, 71 (Ct.App.

2006), *rev'd in part on other grounds*, 380 S.C. 499, 671 S.E.2d 606 (2009) ("Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror."). Accordingly, we find no reversible error.

## C. Refreshing Recollection Using Previous Trial Transcript

 Smith lastly argues the trial court erred in allowing the victim to refresh his recollection at the pretrial hearing with the trial transcript from the previous trial, which was tainted by coaching. We disagree.

In a pretrial hearing, the victim testified Smith anally molested him and forced him to perform anal sex on Smith. The victim could not remember if there was any oral contact. The State wanted to allow the victim to refresh his memory by reviewing a transcript from the previous trial. Smith objected, stating,

> I object to the form which you are showing him the transcript. . . . I don't think he can read it over and then testify. So that would then just remind him of the things that he's not testifying to now, which would then go back to our underlying issue of which we are trying to separate out this trial from.

Smith also argued the transcript from the previous trial could be used to impeach the victim, but not to refresh his memory. Smith maintained it could not be used to "refresh his recollection when [there was] a problem with the tenor of the prior case." The State argued Smith was objecting "to the very procedure by which you refresh [a] witness's recollection."

The trial court ruled the victim could review the transcript at the *in limine* hearing to refresh his recollection. Out of "fairness," the court ruled Smith could impeach the victim by cross-examining him during his testimony before the jury on his inability to remember if there was any oral contact during the *in limine* hearing. During cross-examination, Smith impeached the victim regarding his lack of memory at the

pretrial hearing of the oral molestation and his need to have his memory refreshed.

"[T]he trial court has discretion to allow or refuse examination by an adverse party of writings used by a witness prior to trial to refresh his or her memory." *State v. Hughes,* 346 S.C. 339, 342, 552 S.E.2d 35, 36 (Ct.App.2001) (citing Rule 612, SCRE). " '[A] witness may refresh his memory from notes taken by counsel or other persons at a former trial, or from his own testimony at a previous trial, or from a copy of the same.' " *State v. Dean,* 72 S.C. 74, 81, 51 S.E. 524, 526 (1905) (quoting 2 *Elliott on Evidence* § 866); *see U.S. v. Thompson,* 708 F.2d 1294, 1299 (8th Cir.1983) (finding no error in permitting a witness to refresh memory with the transcript from an earlier trial where the transcript was available to the defendant, and the defendant was given the right to cross-examine the witness); *Sullivan v. State,* 386 S.W.3d 507, 521 (Ark.2012) (finding no abuse of discretion by the trial judge in allowing an eleven-year-old witness to refresh her memory by reviewing the trial transcript of her testimony given five years earlier at the trial of the appellant's co-defendant); *State v. Smith,* 291 N.C. 505, 231 S.E.2d 663, 670–672 (1977) (finding no abuse of discretion by the trial judge who denied defendant's request to strike the entire testimony of a witness who refreshed her memory prior to trial by reviewing the transcript of her testimony at a previous trial).

In this case, the trial court permitted Smith great latitude on cross-examination, stating he would "get about as much leeway as [he] want[ed]." Smith impeached the victim by cross-examining him regarding his need to refresh his recollection at the *in limine* hearing. We find no abuse of discretion by the trial court in permitting the victim to refresh his recollection by reviewing the transcript from the previous trial.

## V. CONCLUSION

Based on the foregoing, Smith's conviction is

**AFFIRMED.**

FEW, C.J., concurs.

GEATHERS, J., concurs in part and dissents in part in a separate opinion.

GEATHERS, J., concurring in part, dissenting in part:

I agree with the majority that there was no reversible error in overruling Smith's objection to the testimony that identified him as the perpetrator. However, I respectfully dissent from the remainder of the majority's opinion for the following reasons: (1) the State elicited a response from an expert in this case that amounted to an improper comment on the victim's credibility; and (2) it was a fundamental error of law to allow the victim to refresh his memory with the coached testimony from the first trial that prompted the grant of a new trial.

## I. Improper Bolstering and Vouching

In this case, there was a three-year delay in disclosure from the time the victim was first allegedly abused to the time of disclosing the abuse. On cross-examination, Smith's counsel asked Tod Lynch–Stanley, the State's forensic interviewer, whether a three-year delay in disclosure would be considered a short or long delay in disclosure. Lynch–Stanley responded, "That would be a fairly long delayed disclosure." Immediately on redirect, the State then asked Lynch–Stanley, "Does the length of the delay in the disclosure have any—in your opinion, does it erode the credibility of the disclosure?" Smith objected, but the trial court overruled the objection. Lynch–Stanley then responded, "[I]t really doesn't [erode the credibility]" and "[W]hen you're looking at credibility, you're looking for other types of things, but not necessarily the length of disclosure."

By coaxing a response from Lynch–Stanley that inherently implicated the credibility of the victim's three-year delay in disclosure, the State was able to present a comment on the victim's veracity—a comment that has been expressly prohibited by our supreme court in State v. Jennings. See 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (holding that it is improper for an expert "to comment on the veracity of a child's accusations of sexual abuse" (citations omitted)); id. at 480, 716

S.E.2d at 94–95 (noting there was no physical evidence presented, finding the victims' credibility was the most critical determination of the case, and holding the error in the admission of evidence that vouched for the victims' veracity was not harmless); *see also State v. Kromah,* 401 S.C. 340, 358, 737 S.E.2d 490, 499 (2013) (holding "even though experts are permitted to give an opinion, they may not offer an opinion regarding the credibility of others"); *State v. Whitner,* 399 S.C. 547, 559, 732 S.E.2d 861, 867 (2012) (stating it is improper "to have the forensic interviewer, improperly imbued with the imprimatur of an expert witness, invade the province of the jury by vouching for the credibility of the alleged victim"); *Smith v. State,* 386 S.C. 562, 569, 689 S.E.2d 629, 633 (2010) (finding the forensic interviewer's opinion testimony improperly bolstered the victim's credibility); *State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (finding it was error to allow an expert to offer an opinion as to whether the victim's allegations were "genuine," although trial court's curative instruction rendered error harmless); *State v. Taylor,* 404 S.C. 506, 514, 745 S.E.2d 124, 128 (Ct.App.2013) ("Improper bolstering occurs when an expert witness is allowed to give his or her opinion as to whether the complaining witness is telling the truth, because that is an ultimate issue of fact and the inference to be drawn is not beyond the ken of the average juror." (quoting *State v. Douglas,* 367 S.C. 498, 521, 626 S.E.2d 59, 71 (Ct.App.2006), *rev'd in part on other grounds,* 380 S.C. 499, 671 S.E.2d 606 (2009))); *State v. McKerley,* 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct.App.2012) ("[W]itnesses are generally not allowed to testify whether another witness is telling the truth."); *State v. Hill,* 394 S.C. 280, 294, 715 S.E.2d 368, 376 (Ct.App.2011) (stating "it is improper for a witness to give testimony as to his or her opinion about the credibility of a child victim in a sexual abuse matter" (citations omitted)); *State v. Dempsey,* 340 S.C. 565, 569–71, 532 S.E.2d 306, 308–10 (Ct.App.2000) (finding an expert improperly vouched for the victim's credibility by testifying that children, in general, are being truthful when they disclose that they have been sexually abused).

Although Lynch–Stanley did not explicitly say, "The victim is credible," the State's question and Lynch–Stanley's response necessarily suggested the victim's three-year delay in

disclosure should not erode the credibility of the disclosure. Furthermore, I disagree with the majority that Lynch–Stanley's clarification—that delayed disclosure was not a "credibility or non-credibility thing"—alleviated the initial comment's impact on the victim's veracity. Unlike in *Dawkins,* where the trial court gave a curative instruction to mitigate the improper comment's prejudicial influence, no such instruction was given here. *See* 297 S.C. at 393–94, 377 S.E.2d at 302. Accordingly, I find that this question and answer "invade[d] the province of the jury by vouching for the credibility of the alleged victim." *Whitner,* 399 S.C. at 559, 732 S.E.2d at 867. Based on the prior holdings of our appellate courts, this testimony was impermissible and, therefore, the trial court erred by not excluding this portion of Lynch–Stanley's testimony.

## II. Refreshing Memory and Tainted Testimony

As to the victim refreshing his memory with the coached testimony from the prior trial transcript, the prejudicial admission of this tainted testimony in the first trial was the precise reason for granting the retrial. Such "refreshing" effectively resurrected the victim's coached testimony. On appeal from the first trial, our supreme court found the trial court's grant of a new trial was proper based on the admission of the tainted testimony that was the direct product of "the clearly improper 'coaching' by [an aunt] of the minor victim." *State v. Smith,* 383 S.C. 159, 168, 679 S.E.2d 176, 181 (2009). Our supreme court went on to explain that, "[b]ecause [the victim] was the key witness in the prosecution's case, we cannot disregard the trial [court's] conclusion concerning the prejudicial impact on [Smith's] right to a fair trial." *Id.* (citing *Sharp v. Commonwealth of Ky.,* 849 S.W.2d 542, 546–47 (Ky.1993)); *Sharp,* 849 S.W.2d at 546–47 (stating the coaching of a child witness by a family friend was "so egregious and inimical to the concept of a fair trial" that it could not be "disregarded in the name of trial court discretion").

Because the coached testimony in the first instance had such a "prejudicial impact on [Smith's] right to a fair trial," *Smith,* 383 S.C. at 168, 679 S.E.2d at 181, I believe the reintroduction of this tainted testimony under the guise of refreshing the victim's memory is a fundamental error of law.

See generally *Harrison v. United States,* 392 U.S. 219, 220–22, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968) (noting inadmissible evidence from the first trial should be excluded on retrial and should not be used for any other purpose (citation omitted)); *State v. McCreven,* 170 Wash.App. 444, 284 P.3d 793, 809 (2012) ("It should not be necessary for us to state that an attorney, including a prosecutor, may not 'coach' a witness, i.e., urge a witness to create testimony, under the guise of refreshing the witness's recollection. . . ."); *People v. Spencer,* 219 A.D.2d 259, 641 N.Y.S.2d 910, 912 (1996) (finding the trial court erred in the retrial by allowing the testimony from the first trial that had been obtained in an improper manner); *State v. Little,* 57 Wash.2d 516, 358 P.2d 120, 122 (1961) (addressing the criteria for the use of a writing to refresh a witness's recollection and acknowledging that the trial court should "be satisfied that the witness is not being coached-that the witness is using the notes to aid, and not to supplant, his own memory"); *People v. Duncan,* 173 Ill.App.3d 554, 123 Ill.Dec. 422, 527 N.E.2d 1060, 1062 (1988) (finding ineffective assistance of counsel from first trial "colored the entire proceeding" and, therefore, the defendant's prior tainted testimony could not be readmitted in the second trial in the State's case in chief).

Based on the foregoing reasons, I would reverse.